THE STATE, on relation of CHESSER *v.* CLARK and Another.

GUARDIAN AND WARD.—A guardian's deed of the real estate of his ward, made under the order of the court, on the guardian's petition for a sale of the land, has only the effect of a deed of quit-claim. The guardian cannot bind his ward by any covenants in the deed.

SAME.—Where, after a sale by a guardian of the ward's land, it is, upon the petition of the administrator of the estate of the ancestor, sold to pay debts, the guardian is not authorized to protect the title of the purchaser at his sale by buying in the land at the administrator's sale. The payment of money by the guardian for such a purpose is no answer to the suit upon his bond.

APPEAL from the *Shelby* Common Pleas.

GREGORY, J.—The relator sued *Clark* and *Everhart* on a guardian's bond, executed in a proceeding to sell the real estate of the ward. The breach assigned was the failure of *Clark*, the guardian, to pay over to the relator, the ward, on his coming of age, the proceeds of the sale of the real estate. The sale was made and the money paid to the guardian by the purchaser in *January*, 1860. The sale was confirmed at the *March* term, 1860, and the deed made to the purchaser.

*Clark* answered, admitting the guardianship, the filing of the petition, and the sale of the land, as averred in the complaint, but alleging that *Chesser*, the relator, claims title to the land by descent from his father, *James Chesser*, late of *Shelby* county, *Indiana*, deceased; that at the filing of the petition, one *Henry Chesser* was, and for a long time before had been, the administrator of the decedent; that before that time, in *June*, 1859, he, as such administrator, filed his account showing the insufficiency of the personal estate of the deceased to pay the debts thereof, and also his petition for an order to sell all the real estate of which *James Chesser* died seized, not set off to his widow, and took an order to sell 160 acres thereof, the proceeds of which proving insufficient to pay the debts of the estate, the administrator, in *July*, 1863, asked for and obtained a further order of sale of the land of the deceased for the payment of the debts of the estate remaining unpaid, and by virtue of such order sold the land claimed by the relator, and which had been sold by the defendant *Clark*, as such guardian, which sales by the administrator were duly confirmed by the court; that the defendant *Clark*, as such guardian, purchased at the administrator's sale the land which had been sold by him as such guardian, for the benefit of the purchaser at the guardian's sale, and paid therefor $1,250; that the residue of the money in his hands belonging to the relator, he, as such guardian, paid over to his ward on his arriving at full age, on a full and final account being had between them, all of which was duly reported to court, approved and confirmed, and the guardian discharged. A transcript of the final settlement of the guardian and his discharge is filed with the answer. The final settlement was *ex parte.* The relator demurred to the answer; the demurrer was overruled and this is assigned for error.

The relator then replied, admitting that his title to the land sold was by descent from his father, *James Chesser*; that *Henry Chesser*, the administrator, is one of the heirs-at

law of the deceased; that before the making of the orders of court for the sale of the real estate of deceased, upon the application of the administrator, to pay the debts of the estate, the said *Henry Chesser*, together with others of the heirs-at-law, sold and conveyed their interest in the land of the deceased to the defendant *Everhart;* that afterwards, in *December*, 1859, *Everhart* filed his petition in said court for partition of said lands; that *Clark*, as guardian, filed his written consent to the partition; that a partition was made; that after the making of the partition, *Clark*, as the guardian of the relator, upon the petition in the complaint mentioned, sold the land set off to the relator in said partition suit; that at the time of the sale, *Clark*, *Henry Chesser*, and the purchaser at the guardian's sale, had full knowledge that the estate of *James Chesser* was unsettled; that the administrator made no objection to the sale; that afterwards, upon the administrator's sale of the land, *Clark*, as such guardian, wrongfully and without any authority purchased the lands which had been sold by him at the guardian sale, for the benefit of, and had the same conveyed to, the defendant *Everhart*, the purchaser at the guardian's sale; that *Clark* wrongfully paid out of the money of the relator on the administrator's sale the sum of $1,275, for which he, *Clark*, has never accounted.

The appellee, *Clark*, demurred to the reply; the demurrer was sustained, and this is assigned for error. The question presented by the record is, was *Clark*, the guardian, warranted in purchasing the land at the administrator's sale for the purpose of protecting and perfecting the title of *Everhart*, the purchaser at the guardian's sale? This depends upon the rights of a purchaser at a guardian's sale under the statute. The guardian has no power to bind his ward by covenants in the deed; his power is to sell and convey under the order of court. The deed of conveyance is only a quit-claim, and passes the interest of the ward in and to the land sold. There was not an entire want of title in the ward. He was seized in fee of the land, subject only

to the paramount claim of the creditors of the ancestor to have their debts satisfied out of the real estate of the decedent on failure of personal assets.

*Everhart*, by his purchase at the guardian's sale, was seized in fee of the land, subject only to this contingency. He could have protected his title by paying the debts of the deceased. This is not therefore a case in which there was entire want of title in the ward.

In *Shuler* v. *Hardin, Administrator of South,* 25 Ind. 386, this court say: "*South* contracted to quit-claim to *Shuler* the title he had in the lot. This did not bind him to discharge the liens resting on the property at the time he so contracted. The judgment against *Matlock* was rendered before *South* executed the title bond to *Shuler,* and was in full force at the time, and if a lien on the lot, it was for *Shuler,* and not for *South,* to look to its discharge." If *Everhart* had paid the debts of the decedent for the purpose of protecting his title, he might perhaps have had some equities against the heirs-at-law, but clearly the relator was not bound to protect his title under the guardian's sale. *Clark,* the guardian, acted without authority in purchasing in the land at the administrator's sale for *Everhart.* It is therefore no answer to this action for him to say that he paid out $1,250 of the ward's money on that sale.

The court erred in overruling the demurrer to the answer, and in sustaining the demurrer to the reply.

The judgment is reversed, with costs, and the cause remanded, with directions to sustain the demurrer to *Clark's* answer, and for further proceedings.

*B. F. Davis,* for appellant.

*E. H. Davis* and *C. Wright,* for appellees.